THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM EDMUNDSON, Defendant-Appellant.

Second District   No. 2—91—0205

Opinion filed July 22, 1993.

G. Joseph Weller, of State Appellate Defender's Office, and Anne S. Quincy, both of Elgin, and David W. Devinger, of Woodstock, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers, Robert J. Biderman, and David Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, William Edmundson, appeals his conviction of reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992))) and driving with a suspended license (Ill. Rev. Stat. 1991, ch. 95½, par. 6—303 (now 625 ILCS 5/6—303 (West 1992))). Defendant contends that the State failed to prove him guilty beyond a reasonable doubt of reckless homicide and that the court improperly admitted evidence of a blood test showing defendant to be intoxicated.

Phil Hauser was driving on Main Street near Elburn on April 20, 1991, when he saw a one-car accident along the side of the road. He drove to the nearby home of Dennis Richmond to summon an ambulance. He and Richmond then returned to the accident scene.

Richmond noticed that the car involved was off to the north side of the road, facing west and resting against a tree. A traffic sign warned that the road curved at that location. Richmond had driven the curve numerous times at or near the 55-mile-per-hour speed limit without difficulty.

Sergeant Kenneth Ramsey responded to the accident scene. He found defendant pinned behind the steering wheel of the car. Defendant had to be pried loose. A passenger in the car, later identified as Walter Kitzler, appeared to be deceased. As Ramsey approached defendant, he noticed an odor of alcohol on the latter's breath. He found open and partly empty beer cans in the car and a broken rum bottle outside the car near the driver's side.

Ramsey saw impressions in the grass where the car apparently left the road, travelled through the grass and came to rest against the tree. The tire tracks were straight until about 10 to 15 feet before the tree, where they appeared to swerve southwesterly. Ramsey also observed a mailbox atop a tree trunk about four to five feet off the road. White paint, the same color as that of the car, was observed on the mailbox. Based on the odor of alcohol, Ramsey opined that defendant was intoxicated.

Deputy Sheriff Thomas Bumgarner also responded to the accident scene. He measured the tire tracks from the point where the car apparently left the road to the point where it came to rest against the tree. The length of the tracks was 367 feet, 5 inches.

Bumgarner later spoke with defendant at the hospital. He noticed an odor of alcohol on defendant's breath and that his eyes were bloodshot. Defendant would not submit to a breath test.

Bumgarner stated that on the night of the accident it began sprinkling when he arrived at the scene although the weather had previously been dry. He had negotiated the curve at the posted speed limit numerous times with no difficulty.

Eleanore Diamse was a medical technologist at Mercy Hospital in Aurora on April 20. She was trained to operate the machine that performs blood tests. She ran through the machine a sample of blood which she obtained from a vial containing defendant's name. She did not recall whether she or Lisa Noonan had actually drawn the sample from defendant. The test showed a blood-alcohol level of .114. The result was written on a slip of paper, since the computer was down.

Lisa Noonan was also a medical technologist at Mercy Hospital. She testified concerning the hospital's usual procedures for performing blood tests. However, she could not recall the defendant or the particular test performed in his case.

Dr. Kawadry was the emergency room physician at Mercy when defendant was brought in. He ordered several blood tests for purposes of treatment. He recalled being handed a computerized printout showing a blood-alcohol level of .114. He did not know who handed him the printout.

Defendant telephoned Gigi Kitzler, the wife of the decedent, about two weeks after the accident. Defendant was upset and crying. He stated that he and Walter Kitzler left defendant's house on April 20 and stopped to have "a couple of beers." The decedent then asked defendant to drive his car, since the decedent was too intoxicated. Defendant recalled that it had been raining prior to the accident. He remembered going around a curve and seeing headlights coming at him. He went off the road and tried to pull back.

Such was the testimony at trial. The parties stipulated that if called to testify witnesses would state that Walter Kitzler died as the result of injuries sustained in the April 20 accident. The State introduced Kitzler's death certificate, as well as a certified copy of the summary suspension order regarding defendant's driver's license, showing that it was suspended on April 20.

Following this evidence, the court granted defendant's motion for a directed finding regarding additional charges of driving under the influence of alcohol and improper lane usage. After closing arguments, the court found defendant guilty of reckless homicide and driving on a suspended license. The court denied defendant's post-trial motion and sentenced him to two years' imprisonment on the reckless homicide count. Defendant filed a timely notice of appeal.

Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt of reckless homicide. Defendant contends that the State offered no evidence that his driving was reckless. He posits that the only evidence which could arguably support a finding of recklessness was the unreliable evidence of his intoxication. He maintains that this evidence was insufficient to establish that he drove while intoxicated and, even if it were, no nexus was established between his alleged intoxication and the accident.

When reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) This standard applies in all cases, regardless of whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) A reviewing court, therefore, must not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Campbell*, 146 Ill. 2d at 375.

A person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which caused the death are performed recklessly or as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992)).) Reckless conduct occurs when an individual consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation. (*People v. Zator* (1991), 209 Ill. App. 3d 322, 328; *People v. McDermott* (1985), 141 Ill. App. 3d 996, 1006.) Recklessness may be inferred from all the facts and circumstances in the record, viewed as a whole, and may be established by evidence regarding defendant's physical condition. (*People v. Smith* (1992), 149

Ill. 2d 558, 565; *People v. Gittings* (1985), 136 Ill. App. 3d 655, 659.) Therefore, evidence of intoxication, while not an element of the offense, is probative on the issue of recklessness. *Smith*, 149 Ill. 2d at 565, citing *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 55.

■ In *Smith*, the supreme court held that intoxication was not an essential element of either involuntary manslaughter or reckless homicide. The two offenses have the same elements except that reckless homicide involves a motor vehicle. (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992)).) Thus, the State is not required to introduce evidence of intoxication to sustain a conviction of either offense. However, where the State does introduce such evidence, it need only present some evidence of intoxication from which, along with other circumstances, recklessness may be inferred. *Smith*, 149 Ill. 2d at 565.

The reckless homicide statute provides a rebuttable presumption that intoxication is equivalent to recklessness:

"In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act." Ill. Rev. Stat. 1991, ch. 38, par. 9—3(b) (now 720 ILCS 5/ 9—3(b) (West 1992)).

Defendant contends, however, that evidence of intoxication alone is insufficient to support a reckless homicide conviction, that there must be some "nexus" between defendant's intoxication and the cause of death. (See *People v. Walljasper* (1981), 97 Ill. App. 3d 81.) Defendant contends that a reckless homicide conviction cannot be based solely on disputed evidence of intoxication and the statutory presumption. *Smith*, released for publication after defendant filed his brief in this court, does not explicitly state the nexus requirement, but appears to do so implicitly, requiring "other circumstances" in order to infer recklessness.

■ We find that the State submitted sufficient evidence from which the court could infer both intoxication and an adequate "nexus" beyond a reasonable doubt. In addition to the disputed blood-test evidence, which we discuss more fully below, there was evidence that both officers who investigated the accident noticed an odor of alcohol on defendant's breath, and Bumgarner observed that defendant's eyes were bloodshot. Sergeant Ramsey found open beer cans in the passenger area of the car and a broken rum bottle outside the car near the driver's side door. Defendant himself admitted to Gigi Kitzler that he and the decedent had been drinking prior to the accident.

In addition to this evidence of intoxication, the circumstances of the accident give rise to an inference that the accident was the result of reckless conduct. The officers' testimony established that the car defendant was driving left the road and travelled through the grass for a distance of 367 feet, grazing a mailbox and eventually coming to rest against a tree. From the photographs in the record, it appears that the curve where defendant left the road is not particularly severe, and witnesses familiar with that stretch of road testified that they had negotiated the curve on numerous occasions without difficulty. Defendant apparently did not attempt to get back on the road and avoid the obvious danger of the tree until he was 10 to 15 feet from it. The failure to take evasive action in the face of an obvious danger may itself constitute a gross deviation from the proper standard of care. (*People v. Mikyska* (1989), 179 Ill. App. 3d 795, 801; see also *People v. Bernotas* (1991), 215 Ill. App. 3d 371 (drifting off to side of road evidence of intoxication).) That other drivers were able to negotiate the curve without difficulty is further evidence of defendant's recklessness. See *People v. Brajcki* (1986), 150 Ill. App. 3d 506.

*People v. Walljasper* (1981), 97 Ill. App. 3d 81, on which defendant relies, is distinguishable. In that case, defendant unexpectedly encountered a wet patch on an otherwise dry road and skidded off the pavement. The same thing had happened to another driver at the same location a few minutes earlier. This court held that, although there was evidence that defendant was intoxicated, there was simply no connection shown between his condition and the accident. (*Walljasper*, 97 Ill. App. 3d at 83.) In the instant case, there was no evidence of a dangerous road condition that caused the accident. Although defendant testified that it was raining at the time, Deputy Bumgarner testified that the rain did not begin until after he arrived at the accident scene. Defendant also told Gigi Kitzler that he remembered seeing headlights coming at him just before he lost control of the car. However, defendant's implicit contention that he was blinded by the headlights is pure speculation. There was absolutely no evidence that the oncoming headlights somehow contributed to the accident. The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

■ Defendant's second contention is that the State failed to lay a sufficient foundation for the admission of the blood-test evidence. He points out that none of the three medical witnesses could recall actually taking the blood sample used for the test. Moreover, the chain of custody was not established where Diamse did not know where the sample she tested came from. Defendant posits that the sample may

have been contaminated, switched with some other sample or tampered with during the testing process.

The State responds that the blood-test results were properly admitted pursuant to section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1992)). Alternatively, the State contends that any error was harmless beyond a reasonable doubt.

Section 11—501.4 provides for the admission of blood-alcohol tests where they have been ordered, performed and used in the treatment of defendant by an emergency room physician. (625 ILCS 5/11—501.4 (West 1992).) Under this section, the State need not provide any evidence of the appropriateness of the test procedures or the working condition of the machinery used. *People v. Crowe* (1992), 232 Ill. App. 3d 955, 967.

The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and a decision concerning the admission of evidence will not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful or unreasonable, or where no reasonable man would take the view adopted by the trial court. *People v. Illgen* (1991), 145 Ill. 2d 353, 364.

Chain of custody evidence is required where physical evidence is not readily identifiable or is susceptible to contamination or tampering. The chain of custody must be sufficiently complete to make it improbable that the evidence has been tampered with. However, the State need not exclude every possibility of tampering. Unless the defendant provides actual evidence of tampering, the State need only establish the stated probability and any deficiencies go only to the weight of the evidence, not its admissibility. *People v. Shiflet* (1984), 125 Ill. App. 3d 161, 178.

In the instant case, the State established a sufficient foundation for the admission of the blood test under section 11—501.4. Dr. Kawadry testified that he ordered the blood test and relied on the results in his treatment of defendant. Diamse testified that she tested a sample from a vial marked with the name William Edmundson. Generally, identity of name creates a rebuttable presumption of identity of person. (*People v. Davis* (1983), 95 Ill. 2d 1, 31.) Noonan testified concerning the hospital's standard procedure for taking and testing blood samples. Evidence of a routine practice of an organization is admissible to prove an action was taken on a given occasion if it is corroborated. (*People v. Galbreath* (1989), 182 Ill. App. 3d 519, 521.) Here, both Dr. Kawadry and Diamse corroborated Noonan's testimony regarding the hospital's standard practice. Diamse recalled actually test-

ing a sample with defendant's name on it. The fact that no one could remember actually drawing the sample used for the analysis goes only to the weight of the evidence. Defendant presented no evidence that the sample was not his, or that it had been contaminated or tampered with in any way.

Moreover, we agree with the State that any error in the admission of the blood test was harmless. The trial court's remarks indicate that it gave the test results little weight in reaching its ultimate conclusion. There was ample evidence in the record to support the finding of intoxication, even absent the disputed blood test, including defendant's own admission that he and the decedent had been drinking. Assuming for the sake of argument that the court erred in admitting the test results, the error was harmless beyond a reasonable doubt.

We note that defendant does not challenge on appeal his conviction of driving on a suspended license. The evidence in the record was sufficient to support that conviction.

For the foregoing reasons, defendant's convictions are affirmed.

Affirmed.

WOODWARD and DOYLE, JJ., concur.