THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN SOLIS, Defendant-Appellant.

First District (6th Division)   No. 1—93—0824

Opinion filed August 25, 1995.—Rehearing denied September 22, 1995.

James O. Stola and Alan Osheff, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James P. Navarre and Barbara J. Ryan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a bench trial defendant, Juan Solis, was convicted of reckless homicide (720 ILCS 5/9—3(a) (West 1992)) and driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 1992)). Defendant was sentenced to three years in the Illinois Department of Corrections. The issues on appeal are: (1) whether the trial court erred in allowing an expert witness to offer testimony as to defendant's blood-alcohol level at the time of the accident based on defendant's inadmissible blood-alcohol test results; and (2) whether the evidence was sufficient to prove that defendant was guilty of reckless homicide beyond a reasonable doubt. For the reasons which follow, we reverse and remand.

Defendant filed a pretrial motion to suppress a blood-alcohol test report that he anticipated would be introduced into evidence as an exception to the hearsay rule pursuant to section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1992)). On April 23, 1990, the trial judge granted the motion to suppress, finding that section 11—501.4 of the Vehicle Code was "irreconcilably in conflict" with Supreme Court Rule 236 (134 Ill. 2d R. 236). The State appealed, and this court reversed the trial judge's ruling finding that no conflict existed. *People v. Solis* (1991), 221 Ill. App. 3d 750, 583 N.E.2d 26.

On remand, defendant brought a motion *in limine* to prevent the

prosecution from introducing his blood-alcohol concentration test because the blood-alcohol test was precluded by section 11—501.4, which provides, in relevant part:

"(a) Notwithstanding any other provision of law, the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code *** or in prosecutions for reckless homicide brought under the Criminal Code of 1961, when each of the following criteria are met:

(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the physician on duty at the hospital emergency room to assist that physician in diagnosis or treatment." (625 ILCS 5/11—501.4 (West 1992).)

According to defendant, because the physician did not receive the results of his blood-alcohol test in writing, the test results are inadmissible.

Blood-alcohol test results not in compliance with the criteria set forth in section 11—501.4 have been held inadmissible. (*People v. Mueller* (1991), 221 Ill. App. 3d 234, 237, 581 N.E.2d 817; *People v. Reardon* (1991), 212 Ill. App. 3d 44, 47-48, 570 N.E.2d 791.) In the instant case, the trial court granted defendant's motion and ruled that the blood-alcohol test results were inadmissible based on its finding that the blood-alcohol test results which the emergency room physician received and considered in his treatment of defendant were not received in writing, contrary to the requirement of the statute.[1]

The State does not dispute the trial court's ruling on the inadmissibility of defendant's blood test results nor does it argue that the amendment to the statute would apply to this appeal.

On October 14, 1992, the State was granted leave to amend its answer to discovery to include an expert witness, Dr. Daniel J. Brown. Because Dr. Brown's testimony included his opinion as to defendant's blood-alcohol level at the time of the accident, based on the inadmis-

---

[1]Effective July 1, 1994, section 11—501.4 was amended whereby the in-writing requirement was deleted. Pub. Act 88—523, eff. July 1, 1994 (codified at 625 ILCS 5/11—501.4 (West 1994)).

sible blood test results, defendant presented another motion *in limine* to prevent Dr. Brown from using or referring to the blood test. After hearing the expert's testimony, the trial judge denied the motion and admitted Dr. Brown's testimony.

Police Officer Jankaskas testified that on September 4, 1987, he observed the collision of defendant's vehicle with the police squad car. After calling for assistance, Jankaskas checked the condition of the occupants of the two vehicles. At that time he observed that defendant had the odor of alcohol on his breath and that his eyes were bloodshot and glassy.

Police Officer Michael Rivera testified that on the day of the accident he spoke with defendant and observed his gait. Rivera stated that defendant's speech was slurred, and he swayed and staggered as he walked. Rivera also noted that defendant had a strong odor of alcohol on his breath. However, on cross-examination, Rivera testified that he never prepared a police report of the accident and also acknowledged that he had witnessed many accidents and that some people were unsteady afterwards.

Police Officer Gary Kempf testified that he prepared the accident report regarding the collision. He observed that defendant's eyes were glazed or bloodshot and his speech was incoherent.

Luis Cassyleon testified that on the day of the accident, at around 8:15 p.m., he was in his car when a dark-colored car passed him at an estimated speed of 50 miles per hour. Cassyleon heard the collision five seconds later. On cross-examination, Cassyleon acknowledged that he lost sight of the speeding vehicle when it went under a nearby viaduct. On re-cross, Cassyleon was shown a signed statement he gave to one of the detectives shortly after the accident in which he estimated the speed of the dark-colored car to be 90 miles per hour.

Helen Mandeltort, an assistant State's Attorney, interviewed defendant in the hospital and prepared a written statement. Defendant agreed with the content of the statement but refused to sign the statement until his attorney reviewed it. According to defendant's statement, at 3:45 p.m. on the day of the accident, defendant and some of his friends went to a bar where they drank several pitchers of beer and shots of tequila. Defendant left the bar at around 8 p.m. and drove north on Ashland Avenue at a speed of 40 miles per hour. He saw the squad car two car lengths away but was unable to stop soon enough to avoid the collision. Bruce Valdes, defendant's co-worker, testified for the State that he was at the bar with defendant for $1^1/2$ to 2 hours and that defendant was drinking beer and shots of tequila.

Detective Jack Moran testified that the speed limit on Ashland Avenue in the vicinity of the accident was 30 miles per hour.

Roscitta Baldreas testified on defendant's behalf that at 8:15 p.m. on the day of the accident she was near the vicinity where the accident occurred when she saw defendant's car traveling at a speed of 28 to 30 miles per hour. She further testified that the squad car was traveling at a speed of 45 to 50 miles per hour and that it did not stop at the stop sign. Baldreas stated that five minutes elapsed from the time the squad car entered the intersection until it collided with defendant's car. She first stated that defendant had only minutes to stop but then said he had only seconds to stop. Baldreas did not smell alcohol on defendant's breath. On cross-examination, Baldreas was shown a statement she signed shortly after the accident in which she stated that defendant was traveling at a speed of 40 miles per hour and the speed of the squad car was unknown. Baldreas denied making the statement and also stated that she estimated the speed of the squad car by the noise of its engine. When the trial judge questioned Baldreas, Baldreas stated that defendant's car and the squad car entered the intersection at the same time and that defendant's car hit the squad car.

Defendant first contends that the trial court abused its discretion in allowing the State's expert witness to offer testimony as to defendant's blood-alcohol level based upon inadmissible medical records.

> "[S]ince the Illinois Supreme Court's adoption in 1981 of Federal Rules of Evidence 703 and 705, Illinois Courts have permitted expert witnesses to give an opinion based upon either firsthand or secondhand facts not in evidence, provided that the information relied upon is of a type reasonably relied upon by experts in their particular field in forming opinions or inferences upon the subject." *People v. Sassu* (1986), 151 Ill. App. 3d 199, 205, 502 N.E.2d 1047, citing *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

In the case *sub judice*, the trial court found the evidence of defendant's blood-alcohol concentration inadmissible because it was not in compliance with section 11—501.4. When the State was granted leave to present the testimony of its expert witness, Dr. Brown, defendant brought a motion *in limine* to prevent Dr. Brown from using or referring to the blood-alcohol concentration test that had been found inadmissible by the court. The trial court denied defendant's motion based on the ruling in *Wilson v. Clark*.

In *Wilson v. Clark*, the plaintiff sued a physician for medical malpractice. The issue before the supreme court was whether it was proper for the defendant's expert witness to testify based upon hospital records that were admitted into evidence without a proper

foundation. Although the court held that the hospital records were improperly admitted into evidence, it found the expert's testimony proper. The court stated that "due to the high degree of reliability of hospital records, an expert may give his response to a hypothetical question based on facts contained in those records, even if the hospital records themselves are not in evidence." (*Wilson*, 84 Ill. 2d at 194.) In subsequent cases courts have held that an expert may rely upon materials that are substantively inadmissible, as long as experts in the field reasonably rely on such materials. *City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 185, 554 N.E.2d 1381; *People v. Anderson* (1986), 113 Ill. 2d 1, 7, 495 N.E.2d 485.

However, in the instant case, instead of using the inadmissible results of defendant's blood-alcohol concentration as a basis for his opinion on some other matter, Dr. Brown used the blood test results at the time the specimen was collected, which was 163 milligrams per deciliter of blood, to render his opinion that defendant's blood-alcohol level at the time of the accident was 165 grams per deciliter of blood.

According to Cleary & Graham:

> "An expert witness may be precluded from disclosing reasonably relied on facts, data, or opinions when their probative value in explaining the expert's opinion pales beside their likely prejudicial impact or their tendency to create confusion. *** Similarly, where policy considerations *** require that certain matters not be admitted at trial, that policy should not be thwarted by allowing the same evidence to come in the 'back door' in the form of the basis of an expert's opinion." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 703.1, at 523-24 (5th ed. 1990), citing *Anderson*, 113 Ill. 2d 1, 495 N.E.2d 485.

In *Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 384, 523 N.E.2d 1335, the court addressed the ruling in *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 216-17, 503 N.E.2d 355, which held that the trial court should liberally allow the expert to determine what materials were reasonably relied upon by those in his field and that it was the opponent's responsibility to challenge the sufficiency or reliability of the basis of the expert's opinion on cross-examination. The weight to be given the expert's testimony was then left to the trier of fact. The *Lovelace* court stated:

> "We do not believe that the *Melecosky* ruling should be applied where, as here, the issue is not the admissibility of the expert's opinion testimony, but the propriety of allowing the expert to disclose substantively inadmissible underlying facts to explain his opinion. Such an extension of *Melecosky* would allow the proponent of otherwise inadmissible evidence to summarily circumvent its

exclusion if he is able to find an expert to rely upon it in forming his opinion." *Lovelace*, 170 Ill. App. 3d at 384.

■ In the case *sub judice*, allowing Dr. Brown to disclose the results of defendant's blood-alcohol concentration level to explain the basis of his opinion as to defendant's blood-alcohol level at the time of the accident was also a means of allowing substantively inadmissible evidence in through the "back door." We further note that, unlike other cases where an expert referred to hearsay information to explain the basis of his opinion, the inadmissible evidence in the instant case was prohibited by statute. Thus, although the State argues that the disclosure of the information was proper because the test results were reliable, in that it was the type of information relied on by other experts in the field, section 11—501.4 mandated prior to July 1, 1994, that the blood-alcohol level would only be admissible if it was in writing.

Therefore, for the aforementioned reasons, we conclude that the trial court's denial of defendant's motion *in limine* regarding Dr. Brown's reliance on defendant's blood-alcohol test results was error.

The State argues that even if the admission of Dr. Brown's testimony was error, there was other competent evidence of defendant's intoxication. " 'Evidentiary errors *** can be labeled harmless only if properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant.' " (*People v. Yates* (1983), 98 Ill. 2d 502, 541, 456 N.E.2d 1369, quoting *People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504.) Because harmless error, like issue No. 2 presented below (whether the evidence was sufficient to prove defendant guilty), depends upon a review of the evidence, we will consider both issues together.

When an appeals court reviews the sufficiency of evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) Then, " '[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original)." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.) Further, discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact.

(*People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357, 363.) The trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable, or implausible as to justify a reasonable doubt as to defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.

A person commits reckless homicide if, while driving a motor vehicle, he or she unintentionally kills an individual, and his or her acts are reckless or likely to cause death or great bodily harm. (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992)).) A person acts "recklessly" if he or she consciously disregards a substantial and unjustifiable risk that his or her acts are likely to cause death or great bodily harm and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. Ill. Rev. Stat. 1987, ch. 38, par. 4—6 (now 720 ILCS 5/4—6 (West 1992)).

In the instant case, there was ample evidence that defendant was under the influence of alcohol at the time of the accident. Police Officer Jankaskas testified that when he observed defendant at the scene of the accident, defendant had the odor of alcohol on his breath and his eyes were bloodshot and glassy. On cross-examination, Jankaskas stated that he was at defendant's car window, within two feet of his face, when he observed him. On redirect examination, Jankaskas stated that he had observed many people under the influence of alcohol and that it was his opinion that defendant was under the influence of alcohol at the time of the accident.

Police Officer Michael Rivera testified that when he went to the scene of the accident, he spoke with defendant and noted that his speech was slurred and that he had a strong odor of alcohol on his breath. Rivera also observed that defendant swayed and staggered as he walked to the squad car. Rivera testified that he had observed a large number of people under the influence of alcohol and that it was his opinion that defendant was under the influence. Police Officer Gary Kempf testified that he prepared the paperwork concerning the collision and that defendant's eyes were bloodshot or glazed and that he was somewhat incoherent. On cross-examination, Kempf stated that he was about four to five feet from defendant when he questioned him and that defendant's speech was slurred and incoherent. By stipulation, Kempf's statements on his police report regarding defendant's condition were admitted.

Assistant State's Attorneys Helen Mandeltort and Bill Gamboney interviewed defendant at the hospital. After talking to defendant, Mandeltort prepared a written statement. According to defendant's statement, on September 4, 1987, at around 3:45 p.m., he met several

of his friends at a bar to celebrate his birthday. He and his friends drank several pitchers of beer and defendant also had several shots of tequila. Defendant had eaten rice and beans at around 12 noon but did not eat anything else prior to the accident. At around 8 p.m. defendant left the bar and started driving north along Ashland Avenue. As he approached the viaduct near 15th Street and Ashland Avenue, he saw a squad car two car lengths away. Defendant tried to stop but could not avoid the collision.

Bruce Valdes, defendant's co-worker, testified for the State that on the day of the accident he left work at around 4 p.m. and went to the same bar where defendant was celebrating his birthday with friends. Valdes was at the bar for 1 1/2 to 2 hours and during that time defendant was drinking beer and shots of tequila. Defendant was still at the bar when Valdes left.

The State also offered testimony by way of stipulation of the physician who treated defendant. He testified that he smelled alcohol on defendant's breath.

In addition to evidence relating to intoxication, there was evidence that defendant was exceeding the posted speed limit at the time of the accident. In his statement to the assistant State's Attorney, defendant acknowledged that he drove at a speed of 40 miles per hour when he left the bar. Luis Cassyleon testified that on the day of the accident, at around 8:15 p.m., he was in his car, which was parked northbound on Ashland Avenue, just South of 16th Street. At that time a dark-colored car passed his car at a high rate of speed heading northbound. He estimated the car's speed at 50 miles per hour. Five seconds later Cassyleon heard a loud explosion. However, on cross-examination, Cassyleon testified that he was parked 50 to 75 feet south of the viaduct on Ashland Avenue and that he lost sight of the speeding vehicle once it went under the viaduct. Cassyleon was also questioned regarding a signed statement he gave to Detective DeLeo shortly after the accident in which he estimated that the speed of the dark-colored car was 90 miles per hour.

Roscitta Baldreas was the only witness who testified that defendant did not appear to be under the influence of alcohol. She also testified that he was not exceeding the speed limit. On the day of the accident, at around 8:15 p.m., she was on the corner of 15th Street and Ashland Avenue when she first saw defendant's car as it was coming from under the viaduct on Ashland Avenue, heading northbound. She estimated defendant's speed to be 28 to 30 miles per hour and the speed of the squad car to be 45 to 50 miles per hour. She stated that the squad car was not using its siren or headlights and did not stop at the stop sign. Baldreas stated that five minutes

elapsed from the time she saw the squad car come into the intersection until the impact with defendant's car and that defendant had only minutes to stop. On further questioning she stated that defendant had only seconds to stop. When asked if she noticed defendant do anything when the squad car entered the intersection, she first responded no but later said that defendant tried to stop when the squad car entered the intersection. After the accident, Baldreas spoke with defendant for five minutes. She stated that she did not smell alcohol on his breath.

On cross-examination, counsel for the State showed Baldreas a statement she signed shortly after the accident occurred in which she said that defendant's vehicle was traveling 40 miles per hour and that the speed of the squad car was unknown. Baldreas denied making this statement. Baldreas also stated that she determined the speed of the squad car by the noise of its engine.

The trial judge also questioned Baldreas. According to her testimony, both defendant's car and the squad car were the same distance from the intersection when she saw them. She also made the statement that defendant's car hit the squad car.

Recklessness may be inferred from all of the facts and circumstances in the record viewed as a whole and may be established by defendant's physical condition. (*People v. Edmundson* (1993), 247 Ill. App. 3d 738, 741, 617 N.E.2d 446.) In his appeal, Edmundson argued that evidence of his intoxication was insufficient to prove that he acted recklessly. In affirming his conviction, the court held that if the prosecution introduced evidence of intoxication, it need only present some evidence of intoxication from which, along with other circumstances, recklessness may be inferred. The *Edmundson* court also noted that the reckless homicide statute establishes a rebuttable presumption that intoxication is equivalent to recklessness:

> " 'In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be *prima facie* evidence of a reckless act.' " (Emphasis added.) (*Edmundson*, 247 Ill. App. 3d at 742, quoting 720 ILCS 5/9—3(b) (West 1992).)

In the instant case, there was evidence that not only was defendant intoxicated at the time of the accident but that he was driving in excess of the speed limit.

In support of his argument that the State did not prove him guilty of recklessness beyond a reasonable doubt, defendant cites *People v. Gosse* (1983), 119 Ill. App. 3d 733, 457 N.E.2d 129. In *Gosse*, the issue before the appellate court was whether the negligible consumption of intoxicants is relevant to the issue of recklessness

without any showing that the defendant was intoxicated. In *Gosse*, the prosecution, in charging the offense of reckless conduct, did not allege that the defendant was intoxicated. At the trial an eyewitness testified that prior to the accident, defendant had one beer and smoked a small amount of cannabis but was not under the influence of alcohol or cannabis at the time of the accident. Two police officers also testified that they smelled alcohol on defendant's breath but did not offer an opinion as to whether the defendant was intoxicated. The court stated that evidence of intoxication was permissible and probative in criminal prosecutions charging recklessness. However, in the defendant's case, the evidence of his minimal consumption of alcohol and cannabis absent proof of physical or mental impairment was so inflammatory as to constitute reversible error. *Gosse*, 119 Ill. App. 3d at 737.

■ Based on these facts, *Gosse* is distinguishable. Unlike *Gosse*, the prosecution in the instant case presented evidence that defendant was intoxicated at the time of the accident, and three witnesses testified that defendant had the odor of alcohol on his breath, his eyes were bloodshot and glassy, his speech was slurred, and his gait was unsteady. Additionally, defendant acknowledged that he had been drinking pitchers of beer and shots of tequila for approximately four hours prior to the accident. Thus, in this case, the evidence of defendant's intoxication was relevant to the issue of recklessness.

However, although we conclude that the evidence is sufficient to convict, we cannot say that it is overwhelming. In its comments, the trial court seemed to agree:

> "This court has considered all of the evidence in the case and considering the fact that I could not accept based upon the statute the testimony of the blood level received as evidence of the blood level, I find it to be a very close case."

The court then stated that because the testimony of Dr. Brown was persuasive, the State met its burden of proving defendant guilty of reckless homicide beyond a reasonable doubt. However, for the reasons discussed above, we conclude that the admission of Dr. Brown's testimony was error. Given the trial court's comments and reliance on evidence which we find inadmissible, we cannot say that the error of admitting Dr. Brown's testimony was harmless.

The judgment of the circuit court is reversed and we remand for a new trial.

Reversed and remanded.

EGAN and ZWICK, JJ., concur.