THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KURT SZYMANOWSKI, Defendant-Appellant.

First District (5th Division)   No. 1—87—1509

Opinion filed April 28, 1989.

Patrick A. Tuite and David S. Majia, both of Tuite, Majia & Giacchetti, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Anthony J. Carballo, and Pamela Hughes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant, Kurt Szymanowski, was convicted of the attempted murder and aggravated battery of his girl-friend, Debra Guzy, and was sentenced to 12 years' imprisonment.

For reasons which follow, we must now reverse.

In the early morning of April 16, 1986, police officers were summoned to defendant's apartment at 2419 West Fullerton Avenue in Chicago, where they found Guzy, unconscious from apparent blows to the head, in a pool of blood on the kitchen floor. Guzy's head injuries were extensive. She remained in a semi-comatose state for five to six days after the incident and received continued medical treatment for two months.

At trial, the State presented evidence to establish, circumstan-

tially, that defendant had beaten Guzy.

Chicago police officer John Lyons testified that at approximately 12:50 a.m. on April 16, 1986, he received an assignment to investigate a disturbance at a gas station at 2401 West Fullerton Avenue. Lyons stated that, upon arriving at that address, he observed the defendant in blood-soaked clothes. Lyons asked defendant if anything was wrong, but defendant was unresponsive. When defendant "rushed" at Lyons, he was arrested. Lyons testified that the blood on defendant's shirt was wet and that defendant appeared to be "under the influence of something." Lyons and his partner proceeded to 2419 West Fullerton Avenue to look for a victim. When they could see nothing from outside of the apartment, they returned to the police station. Defendant was released from custody at 3:30 a.m.

At 4:15 a.m. Lyons, in response to a radio broadcast, returned to 2419 West Fullerton Avenue. There he found defendant, naked, standing in the doorway. Lyons stated he went over to assist another officer who was standing over the victim. The victim was lying on the kitchen floor near a broken kitchen table and appeared to have been brutally beaten about the head. Lyons stated the apartment doors had not been forced open.

The police found defendant's clothes outside the apartment. Defendant's shirt was in a tree, his pants were partially on a garage roof, and his boots and socks were in the yard. Lyons testified that the bloodstains on defendant's shirt were as they appeared when defendant was earlier arrested.

Thomas Marquez, another police officer, testified that he and his partner were the first to arrive at defendant's apartment at 4:15 a.m. on April 16, 1986. Marquez stated he tried to enter through the back door, but it was locked. He observed a body lying on the kitchen floor. As the officers were preparing to force their way through the rear door, defendant opened it. Defendant was naked. Defendant told Marquez, "[W]e don't need the police in here, you can't come into my apartment." The officers arrested defendant.

Chicago police detective Michael Herigodt testified that there were no signs of forced entry at the apartment.

Herigodt also testified as to an interview he conducted of defendant later that morning. Defendant told Herigodt that, shortly after midnight, he and Guzy had argued and he had punched her twice. He then left the apartment, ran outside, and was arrested. At the detention center, he became frustrated and started banging his head against the cell bars. He was taken to a hospital for treatment and, later, was released by police. He returned to his apartment, where he

saw the victim lying where he had left her. After seeing the victim, he ran outside and began screaming.

Defendant was again interviewed on April 17, 1988, and, at that time, signed a written statement which was read into the record. The statement indicated that both defendant and Guzy were taking the animal tranquilizer PCP and had argued over Guzy's use of the drug. Defendant took the drug from Guzy. Guzy tried to get the drug back from defendant, scratching him in the process. Defendant struck Guzy with his fist and she fell on the table, breaking it. When defendant saw Guzy lying on the kitchen floor in a pool of blood, he went out to the street, "flipped out" and called for help.

Pamela Fish, a Chicago police department serologist, was qualified as an expert to testify to her analysis of blood samples collected from defendant's clothing. Examination of defendant's shirt showed that it contained heavy diffused stains indicating a concentration of blood which had soaked through, and spread out on, the material. She determined the blood was type 0; Guzy's blood type. She determined blood present on the left leg area, near the knee, of defendant's pants was type A; defendant's own blood type. She also found type A blood present on the underside of defendant's socks.

Guzy, testifying on behalf of the defendant, stated that Daniel Flahive, her estranged boyfriend and natural father of her two daughters, not the defendant, beat her. Guzy stated that from 1975 to 1985 she had lived with Flahive. However, in the spring of 1985 she began living with defendant at his apartment. She testified that, at approximately 11 p.m. on April 15, 1986, she and defendant had argued over defendant going out to a store. Guzy stated that as she was trying to keep defendant from going by "pulling him back," she fell over one of her daughter's toys and hit her nose on a door. Her nose began bleeding. Guzy stated that when defendant then hugged her, he got blood on his jacket. After defendant left, she laid down and fell asleep.

Guzy testified she awoke at the sound of someone pounding at the door. It was Flahive. Guzy testified Flahive kicked the door open. She stated Flahive was yelling that she owed him money and demanded to see one of his daughters. Guzy stated that Flahive slapped and hit her while continuing to demand money. When Guzy told him that she did not have any money, he hit her again in the face and in the back of the head. She stated that Flahive hit her four times; first with an open hand and then with a closed fist. The next thing she remembered was being in the hospital.

Guzy also testified as to several legal actions instituted against Flahive, including complaints for damage to property and for striking

her and one of her daughters. The complaints were filed between January and March of 1986.

On cross-examination, Guzy stated she was presently living with the defendant and was involved in a custody dispute with Flahive over her two children. Guzy admitted that on the night of the incident, defendant was wearing the bloodied shirt admitted as evidence, but did not remember if he was wearing a jacket.

Cathy Ongley, a social worker at Schwab Rehabilitation Center where Guzy received treatment, testified that on May 9, 1986, Guzy stated in an interview that Flahive had injured her. Ongley admitted, however, that, at that time, Guzy did not know her own name, her children's names, where she was, or what day, month, or year it was. In fact, Guzy thought she was in the hospital because she was having a baby. Ongley stated that the report she prepared that day indicated Guzy had said "David," not "Daniel," injured her.

The parties stipulated that, if called to testify, Dr. Michael Reinstein, a psychiatrist affiliated with Schwab Rehabilitation Center, would testify that during an interview conducted on May 28, 1986, Guzy stated that her boyfriend became violent and caused her injuries.

Daniel Flahive testified for the State as a rebuttal witness. He stated that between 3 and 10 p.m. on April 15, 1986, he was home at 3716 West Cullom Avenue in Chicago visiting with neighbors. From 10 p.m. until 8:30 a.m. of the next day he was with his wife, in bed.

OPINION

We are presented here with an unusual case in that defendant's guilt was premised upon circumstantial evidence contrary to the victim's own eyewitness testimony that someone other than the defendant was her assailant. Illinois courts have noted, generally, that circumstantial evidence to support a conviction must establish, to a reasonable and moral certainty, that defendant committed the offense charged, and must be inconsistent with any reasonable hypothesis of defendant's innocence. (See *People v. Weeks* (1983), 115 Ill. App. 3d 524, 528, 450 N.E.2d 1351, 1354.) We acknowledge that evidence presented by the State suggests defendant could have been responsible for Guzy's beating; however, we are unable to conclude, because of Guzy's testimony, that the record of evidence is sufficient to establish defendant committed the offense to the requisite degree of certainty.

Guzy steadfastly maintained at trial that Flahive, not the defendant, beat her on the morning of April 16, 1986. In that regard, her testimony was not impeached or directly contradicted and, therefore,

cannot be disregarded. (See *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 430 N.E.2d 1126.) While we are aware defendant's post-arrest statement that he struck Guzy was inconsistent with her own testimony, we must note that both statements pertained to purported events immediately preceding defendant's exit from the apartment and his initial arrest. As such, that inconsistency provides no basis to disregard Guzy's sworn testimony that Flahive entered the apartment, after defendant left, and beat her. And, much as it might be unlikely, we do not otherwise determine that testimony to be inherently improbable. (See *Brown*, 88 Ill. 2d 81, 430 N.E.2d 1126.) Because Guzy's testimony established Flahive, not the defendant, beat her, we conclude the record of evidence is insufficient to sustain defendant's guilt beyond a reasonable doubt. We therefore reverse defendant's convictions and sentence.

Reversed.

MURRAY, P.J., and PINCHAM, J., concur.