THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL DIXON, Defendant-Appellant.

First District (4th Division)   No. 1—92—1075

Opinion filed November 18, 1993.—Rehearing denied December 16, 1993.

772

William H. Wise, of Wise & Kuzas, Ltd., of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Carl Dixon, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a) (now 720 ILCS 5/9—1(a) (West 1992))) and sentenced to 20 years of imprisonment in the Illinois Department of Corrections.

On appeal, defendant contends (1) the trial court erroneously admitted the prior inconsistent statement of a State witness for

substantive purposes when the statement did not meet the requirements of section 115—10.1 of the Code of Criminal Procedure (hereinafter the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1 (now 725 ILCS 5/115—10.1 (West 1992))); (2) a witness' assertion of his fifth amendment right against self-incrimination in response to questions pertaining to the prior inconsistent statement denied him his right to confront witnesses against him; (3) he was not proved guilty beyond a reasonable doubt; and (4) the trial court erroneously denied both his motion for a directed verdict and his motion for a new trial as the evidence was insufficient to prove him guilty beyond a reasonable doubt.

We affirm.

The following pertinent facts were adduced at trial. Officer Darryl Cavin testified that, on the morning of May 12, 1990, he responded to a call regarding a shooting. Upon arriving at the scene, he observed a man lying in the crosswalk of the street with his face down. Officer Cavin stated that he questioned Christopher Carlisle, one of the individuals at the scene. Carlisle told him that the victim's name was Patrick Marshall and that a man ran up behind Patrick and fired three shots.

Ashadu McPherson, the victim's cousin, testified that on the night of May 11, 1990, he was with Patrick Marshall, defendant, Omar Norman, and Christopher Carlisle. McPherson stated that defendant was showing the group of men a black .9 millimeter gun which they passed amongst themselves. As the gun was passed, Marshall ran from the group, apparently having taken defendant's gun. Defendant then ran to his house and emerged with a shotgun. He put the shotgun in the trunk of his car and drove around with McPherson and Norman looking for Marshall, who he believed had taken his gun.

As they drove around, defendant told McPherson to get his gun back. McPherson assured defendant that he would get the gun back and then got out of the car. Later that evening, McPherson met up with defendant again and observed a .22-caliber or a .25-caliber gun in defendant's lap. While they were in the car, defendant said, "Tell Pat to give me my gun" and "If you don't give me my gun, I am going to have to do something to him." McPherson told defendant that he would get his gun back and defendant then dropped off McPherson. McPherson later called home and learned that Marshall had been killed.

At trial, Christopher Carlisle, a friend of both defendant and Patrick Marshall, testified that he was with Marshall on May 12, 1990, but denied many of the facts pertaining to the crime included in a statement he had given to Assistant State's Attorney David Studen-

roth which directly implicated defendant in the killing. When specifically asked about what he told Studenroth, Carlisle exercised his fifth amendment right against self-incrimination. Carlisle was also shown a copy of the statement and when asked whether the signature at the bottom was his, he again asserted the fifth amendment. Defense counsel chose not to cross-examine Carlisle.

The State then called Assistant State's Attorney Studenroth to the stand, who testified that Carlisle gave a three-page statement to him regarding Marshall's killing. Subsequent to making the statement, Studenroth observed Carlisle read it and sign each page at the bottom. The statement revealed that Carlisle saw defendant walk toward Marshall with a gun in his hand. Defendant then asked Marshall, "Where's my shit at?" and Marshall replied, "I'll get it to you man." The statement further indicated that Carlisle then saw defendant point a gun at Marshall and fire several times. At the conclusion of this testimony, defense counsel chose not to recall Carlisle.

After argument in aggravation and mitigation, defendant was convicted of first degree murder and sentenced to 20 years in the Illinois Department of Corrections. The trial court also sentenced defendant to a seven-year term of imprisonment for violating his probation on a burglary conviction to be served concurrently with the murder sentence. Defendant appeals.

Initially, defendant maintains that the trial court improperly admitted the prior inconsistent statement of Christopher Carlisle as substantive evidence because the statement did not meet the admissibility requirements of section 115—10.1 of the Code. We do not agree.

■ Section 115—10.1 of the Code provides in pertinent part:

"Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness ***." (725 ILCS 5/115—10.1 (West 1992).)

For the reasons which follow, Carlisle's statement was properly admitted into evidence.

■ The first admissibility requirement is that the witness' prior statement must be inconsistent with the testimony he gives at trial. On direct examination, the following colloquy occurred between the prosecutor and Carlisle:

"Q. Did you see Carl Dixon get out of the car?
A. No, I didn't.
Q. Did you see Carl Dixon walk up to Patrick?
A. No, sir.
Q. Did you see Carl Dixon with a gun in his hand?
A. No, sir.
Q. Did you hear Carl Dixon say, 'Where is my shit at?'
A. No, sir.
Q. Did you hear Patrick respond, 'I'll get it to you, man.'?
A. No, sir.
Q. Did you see Carl Dixon point that gun at Patrick and start firing several times at Patrick?
A. No, sir.
Q. Did you see Patrick run about a half block and collapse?
A. No, sir."

At this point, the prosecutor showed Carlisle the statement he gave to Assistant State's Attorney Studenroth on the day of the killing. Carlisle stated that he recognized it to be a statement. When asked if it was the statement he gave to the assistant State's Attorney, he replied, "I plead the fifth." He was then asked if his signature appeared at the bottom of the page and again he invoked his fifth amendment privilege. The trial court allowed him to utilize this privilege in each of these instances.

The next day, the State called Assistant State's Attorney Studenroth to the stand, who testified that he interviewed Carlisle and took his statement. He stated that after he wrote out the statement, he reviewed it with Carlisle "word for word, page by page." Carlisle then signed his name at the bottom of each page as did Studenroth and two police detectives.

After both sides were heard as to the admissibility of Carlisle's statement as a prior inconsistent statement under section 115—10.1, the trial court stated, "I am going to permit it[,] [o]n the basis that this statement is inconsistent with what he testified to yesterday[,] [w]hen these questions were put to him specifically." Therefore, only the portions of Carlisle's statement that directly contradicted his previous testimony were allowed into evidence.

The statement's relevant contents revealed that Carlisle saw de-

fendant get out of the car and walk toward the victim. He saw defendant with a gun in his hand and heard him ask Marshall, "Where's my shit at?" He also heard Marshall reply, "I'll get it to you man." The statement further reveals that Carlisle saw defendant point the gun at Marshall and fire several times. It also indicates that, after the shooting, Carlisle and the victim began to run. Finally, it states that Carlisle observed the victim collapse after running about half a block.

Defendant now argues that Carlisle's out-of-court statement could not have been inconsistent with his testimony at trial because he invoked his fifth amendment privilege. We disagree.

Defendant was not able to invoke his fifth amendment privilege in all instances and did testify substantively as to his knowledge of the events surrounding the killing of Patrick Marshall. As previously established, Carlisle responded to substantive questions posed by the prosecutor by effectively denying the information he gave to Assistant State's Attorney Studenroth. Clearly, the portions of Carlisle's statement were in direct contradiction to his testimony at trial and are, therefore, inconsistent.

Defendant urges us to liken this case to *People v. Redd* (1990), 135 Ill. 2d 252, when the two are in fact incongruous. In *Redd*, the witness in question successfully invoked the fifth amendment privilege throughout his entire testimony and failed to answer any questions. The trial court then permitted the introduction of the witness' prior testimony, reasoning, "I interpreted [section 115—10.1] to mean that when someone takes the fifth amendment, that is the same as being inconsistent with his testimony at the hearing or trial or in fact as to the Grand Jury." (*Redd*, 135 Ill. 2d at 302.) Our supreme court concluded that since the witness did not testify, "it was error to allow him to be impeached by prior statements allegedly made by him." *Redd*, 135 Ill. 2d at 317.

Our situation here is dissimilar. Carlisle repeatedly tried to invoke the fifth amendment privilege and the trial court determined, instance by instance, whether he had a valid privilege to invoke. Thus, Carlisle was allowed to take the fifth as to some questions but not as to others. Consequently, unlike *Redd* and as previously illustrated, he did provide substantive testimony and specific answers to questions posed to him at trial.

We believe portions of Carlisle's statement were properly admitted as substantive evidence because they were in direct contradiction to his prior testimony and inconsistent in accordance with section 115—10.1 of the Code of Criminal Procedure.

The second element of section 115—10.1 requires that the witness

must be available for cross-examination concerning his prior statement. This requirement was unequivocally satisfied. At the conclusion of Carlisle's direct examination testimony, the trial court inquired as to whether defense counsel wanted to cross-examine Carlisle. Defense counsel responded, "No cross, your Honor." Defense counsel, then, had the full opportunity to cross-examine Carlisle, who was readily available. This is all section 115—10.1 mandates.

Defendant argues that, because Carlisle invoked his fifth amendment privilege on direct examination, he would have been unavailable to testify on cross-examination. As previously elucidated, Carlisle did testify substantively at trial and defense counsel decided not to cross-examine him, presumably because his testimony was favorable to defendant.

This contention further assumes that Carlisle would have asserted his fifth amendment privilege when cross-examined by defense counsel. This, of course, is speculation. Defendant cannot claim a lack of opportunity to cross-examine Carlisle when he did not even attempt to call Carlisle to the stand.

We also reject defendant's assertion that he could not effectively cross-examine Carlisle or challenge the truth of his statement because Carlisle was not on the stand when the statement was admitted into evidence. After Carlisle's prior statement was introduced by Assistant State's Attorney Studenroth, defense counsel specifically asked the trial court if he could recall Carlisle as a rebuttal witness. The trial court granted this request. If necessary, then, defense counsel had the option of recalling Carlisle to rebut the assistant State's Attorney's testimony. Carlisle was thus available to be cross-examined within the meaning of section 115—10.1.

Third, the witness' statement must have been signed by him and must narrate an event within his personal knowledge. Assistant State's Attorney Studenroth testified that he took Carlisle's statement and saw him read and sign each page of it. At trial, Studenroth identified the statement as the one which he had written and seen Carlisle sign. We believe that, although Carlisle took the fifth when he was shown the statement and asked if it was his, the testimony of Studenroth is sufficient proof that the statement was made and signed by Carlisle. As the final requirement of section 115—10.1 was satisfied, the trial court did not err in admitting Carlisle's prior inconsistent statement into evidence.

Next, defendant submits that Carlisle's invocation of his fifth amendment privilege against self-incrimination, when asked about the prior inconsistent statement, made him unavailable for cross-examination violating the confrontation clause of the sixth amend-

ment. In view of our previous discussion, this issue fails to warrant much attention.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis omitted.) (*United States v. Owens* (1988), 484 U.S. 554, 559, 98 L. Ed. 2d 951, 957-58, 108 S. Ct. 838, 842, quoting *Kentucky v. Stincer* (1987), 482 U.S. 730, 739, 96 L. Ed. 2d 631, 643, 107 S. Ct. 2658, 2664; see *People v. Flores* (1989), 128 Ill. 2d 66.) As defendant had the opportunity to cross-examine Carlisle, his right to confront witnesses was not violated.

■ Next, defendant contends that he was not proved guilty beyond a reasonable doubt. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788; see *People v. Young* (1989), 128 Ill. 2d 1.) We believe, based on the evidence presented in the light most favorable to the prosecution, that a rational trier of fact could have found defendant guilty of first degree murder beyond a reasonable doubt.

■ Finally, defendant opines that the trial court erroneously denied both his motion for a directed verdict and his motion for a new trial. In furtherance of this position, defendant points solely to the trial court's improper admission of Carlisle's prior inconsistent statement as substantive evidence. We have already determined that the statement was properly admitted.

In ruling on a motion for a directed verdict, "the trial court need consider only whether a reasonable mind could fairly conclude beyond a reasonable doubt the defendant is guilty, considering the evidence most strongly in the People's favor." (*People v. Huffman* (1988), 177 Ill. App. 3d 713, 722-23.) We believe application of the above standard to this case supports the trial court's denial of defendant's motion for a directed verdict.

The appropriate standard of review for the denial of a motion for a new trial is as follows:

> "The decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown. [Citations.] In determining whether that discretion was abused, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 548-49.)

Based on our thorough review of the record, we do not believe the trial court abused its discretion in denying defendant's motion for a new trial.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.