THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL KINSLOE, Defendant-Appellant.

First District (6th Division)   No. 1—94—0267

Opinion filed June 7, 1996.

RAKOWSKI, J., concurring in part and dissenting in part.

Bernard B. Nathan and Jeffrey I. Gehl, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Samuel Kinsloe, was accused of setting his wife, Laverne, on fire during a fight. At his trial, Laverne exonerated him. A jury found him guilty of heinous battery and aggravated battery, both premised upon the burning, but acquitted him of attempted murder. The trial judge sentenced him to 12 years' imprisonment on the heinous battery conviction. He contends that the judge erred in admitting, as substantive evidence against him, pretrial, inculpatory statements allegedly made by Laverne. He further argues that absent those statements there was insufficient evidence to convict him.

Laverne Kinsloe was the only occurrence witness in this case. The defendant did not testify. As a result of events which occurred on February 17, 1993, she suffered severe burns covering 30% of her body, primarily on her arms, chest, back and head. According to the doctor who treated her, she will continue to suffer from some of these burns throughout her life. The prosecution called her to testify against the defendant knowing that she would state under oath that she somehow set herself on fire. The State's case hinged upon expert testimony about the cause and origin of the fire and upon impeaching Laverne's credibility, as well as by using as substantive evidence an assistant State's Attorney's testimony summarizing the contents of pretrial writings Laverne allegedly made inculpating the defendant.

Laverne's testimony is as follows. Laverne and the defendant were married on April 19, 1992. At that time, they lived together in a house in Alsip, Illinois, with her two minor children. The defendant owned another house in Posen, Illinois, a two-flat, which he was in the process of renovating, with Laverne's financial assistance. In August 1992, the couple moved into the lower level of the Posen residence. Laverne described her marriage to the defendant as "chaotic." The defendant abused Laverne both physically and sexually. This abuse began before they were married.

During the morning of February 16, 1993, Laverne and the defendant were at the Alsip house, where they got into an argument, after which the defendant left. Laverne subsequently went about her

business for the day, returning to the house around 11:30 p.m. At that time, she discovered that numerous gifts the defendant had given her were missing. The defendant did not return to Alsip that night.

The next morning, Laverne drove to the house in Posen. There, she found the items that were missing, including a computer, china and linens. She also found some renovation materials for which she had paid, including some oak paneling. She put these into the car and drove back to Alsip.

She returned to Posen at 1 p.m. in her pick-up truck. She was going to remove additional items, such as furniture, that she had placed on a deck attached to the back of the house. When she arrived she noticed that these things had been removed from the deck. She then attempted to enter the front of the house but could not get the door open, although her key was working. She returned to the back of the building to try to gain entry there when the defendant appeared.

When she saw him she began running up an outside stairway that leads to a deck outside the upstairs apartment. She got inside the building, but the defendant dragged her out and began choking her and leaning her over the deck railing. The defendant calmed down and let Laverne go, then turned and walked into the house, shutting the door behind him. She demanded that he open the door, and he relented. She entered the apartment, and the two began talking at a distance of 10 to 15 feet. The defendant recommenced the argument from the previous day, his anger rising, and he finally told Laverne to leave the house. She responded that the house was as much hers as his. Laverne believed that the defendant had added her name to the deed for the property. The defendant told her that he had lied about doing so.

She became very upset and began pointing to things in the house for which she had paid. Eventually, she picked up a can of liquid floor paste wax. She continued to move through the apartment and the defendant pursued her. She attempted to exit the front door, but she could not because the defendant had nailed it shut. The defendant caught Laverne and began choking her and banged her head against the wall. He also bent her thumb back to pry the can loose. Eventually the can banged against the wall, the cap opened, and the wax spilled onto the wall and carpeting.

The defendant took the can and began kicking Laverne in her back and side. Laverne began screaming as he poured the contents of the can of wax on her. The wax entered Laverne's ear and throat, and ran down her body. Soon, she began to feel herself "getting high from the fumes." The defendant continued to attack Laverne, yelling

at her, picking her up and using her "as a battering ram against the hallway wall."

Somehow, Laverne ended up in the bedroom. The defendant was blocking the doorway, and Laverne could not leave. As she stood against the wall, she saw a "wallpaper cutter" on the window sill and grabbed it in her left hand, threatening to cut him if he did not move. She could not recall precisely what then occurred because she was high from the fumes at the time. She smokes when she gets nervous. Apparently in the mistaken belief that the wallpaper cutter was a cigarette, she tried to put it in her mouth. She heard the defendant say, "Laverne, don't do it." Nonetheless she tried to light the wallpaper cutter. Then, she felt something on herself and tried to brush it off. She realized her hand was on fire. She was wearing a Chicago Bulls' starter jacket and jeans and a T-shirt. As she tried to unzip the jacket, she realized her whole body was on fire. She indicated that the fire started at mid-chest level, approximately 10 or 11 inches below her neck.

She pleaded with the defendant to help her. Then, she felt something on top of her and felt the jacket coming off and remembers it being thrown away, as she was "dropped and rolled" by the defendant. Nonetheless, she continued to burn. She saw the defendant in the hallway, and he told her to "get in the water." The defendant was apparently referring to the bathroom located off the bedroom. She made it to the bathroom, and the defendant told her to get in the shower, and she did so. At first, there was no water. She began to feel her skin "dripping off of" her. The defendant was doing something with his hands, but Laverne stated that she finally turned on the water. The next thing she remembered was being taken by paramedics to the hospital.

Laverne was taken to the Loyola University Hospital burn unit. At Loyola, she was attended by Dr. Richard Gamelli. When she arrived, she had been intubated so she could breathe. She could not speak and was medicated to relieve any pain. Dr. Gamelli performed multiple surgeries on Laverne during the early spring of 1993 to remove and replace damaged skin tissue.

Dr. Gamelli acknowledged that the medical reports upon which he relied in diagnosing and treating Laverne indicated that Laverne had lit a cigarette before the fire. Dr. Gamelli also had the opportunity to speak with Laverne toward the end of February. Laverne told him simply that the fire occurred while she and her husband were together and that "she was set on fire."

Milton Batson is an arson investigator for the State of Illinois Fire Marshall. He investigated the fire at the defendant's house in

Posen. The State also called him to testify as an expert on the cause and origin of fires. Batson examined the floor wax in the can which the defendant poured onto Laverne. He stated that the material in the can was a combustible, as opposed to flammable, material. Flammable materials are those, such as gasoline, which emit sufficient vapors that one need only hold a flame in their vicinity to ignite them. Combustible materials, on the other hand, emit fewer vapors, and a flame must ordinarily be touched to the materials to ignite them.

Police officers at the scene apparently retrieved the shirt Laverne was wearing and gave it to Batson. To determine the cause and point of origin of a fire involving clothing, Batson looks for fabric shrinkage, as well as "V-patterns," indicating upward burning. Based upon the condition of the fabric of Laverne's shirt, Batson determined a point of origin on the front of the shirt on the left upper chest area. Batson was also able to determine that this fire was extinguished because it did not continue up to the top of the shirt. Batson also discerned a point of origin on the back of the shirt, toward the middle right side.

Because he saw two points of origin on the shirt, one on the front and one on the back, Batson determined that the fire was not started accidentally. (No objection was made to this testimony nor is it assigned as error in this court.) He acknowledged, however, that if a person wearing a shirt covered with a combustible material caught fire at one point and then rolled on the ground, a second point of origin could occur. He stated, however, that such rolling would not produce a V-pattern as existed on the back of Laverne's shirt.

On February 18, 1993, Assistant Cook County State's Attorney (ASA) John Coyne visited Laverne at Loyola hospital. At the time, Laverne was unable to speak and communicated by writing notes on a clipboard. Laverne acknowledged that Coyne visited her and that she wrote answers to his questions. She denied that she wrote that the defendant told her, "I'll kill you," after she grabbed the wallpaper cutter. She also denied communicating to Coyne that the defendant took a cigarette lighter and set her on fire: "No, he never did that." She insisted that she told paramedics and the assistant State's Attorneys, as well as others, that the burning incident was an accident.

Laverne also denied telling ASA Laura Sullivan on April 13, 1993, that the defendant set her on fire with a lighter. She also denied telling Sullivan on July 22, 1993, that she did not want to proceed on the charges against the defendant because she had entered into an agreement with him under which he would pay her back for her investment in his property ($51,000) and she would take possession of

his property in Posen. The State called Sullivan to impeach Laverne's credibility on the substance of their April 13 and July 22 conversations.

ASA Coyne testified that he interviewed the defendant on February 17, the day of the incident. The defendant was under arrest at the time. He stated that Laverne had thrown him out of the Alsip home on February 16 because he had not executed a deed to her for his property. He went to the Posen house after this. He nailed the door shut at the Posen house because he noticed things missing and believed Laverne had taken them. He acknowledged pouring wax on Laverne and beating her. He denied setting Laverne on fire. He stated that at some point during the altercation, he walked away, but then heard Laverne scream, and he turned and Laverne was on fire. She had not been smoking at the time nor had she been holding a lighter.

ASA Coyne talked with the defendant again on February 18, after Coyne had visited Laverne. At that time, the defendant stated that Laverne had set herself on fire. He said that she took a lighter and "lit an area above her left breast on fire." The defendant had not told him this the previous day because he did not want Coyne to think Laverne was crazy.

Coyne also testified about his interview with Laverne at the hospital. When he entered Laverne's room, her entire head was wrapped in bandages, and a tube was in her mouth. He acknowledged that Laverne answered his questions by writing them on paper attached to a clipboard held by the attending nurse. Before he left the hospital, the nurse confiscated the notes, purportedly pursuant to hospital policy. The State did not produce the notes for trial, nor did it call the nurse to corroborate Coyne's testimony. Additionally, the State offered no evidence indicating what efforts, if any, it had undertaken to obtain the notes. The State accepted the nurse's explanation that hospital rules precluded her from giving them the notes. The State did not attempt to subpoena the notes. Coyne summarized Laverne's answers after their conversation in a memo which he signed; however, he apparently neither offered the memo to Laverne for her signature nor showed her the memo.

The judge permitted Coyne to testify as to the answers Laverne allegedly wrote down—answers which contradicted Laverne's trial testimony—and admitted the testimony as substantive evidence pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115—10.1 (West 1992). According to Coyne, Laverne wrote that after she picked up the wallpaper cutter, the defendant said, "I'll kill you." Then she wrote that the defendant "lit me on fire."

■ The defendant argues that Coyne's testimony did not satisfy

the requisites of section 115—10.1, which permits the admission as substantive evidence in criminal cases of prior inconsistent statements by a witness when:

> "(c) the statement—
>
> ***
>
>> (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
>>
>>> (A) the statement is proved to have been written or signed by the witness, or
>>>
>>> (B) the witness acknowledged under oath the making of the statement ***, or
>>>
>>> (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115—10.1(c) (West 1992).

In this case, the trial judge admitted Laverne's statements upon his finding that both Laverne's and Coyne's testimony proved that Laverne had written both that the defendant told her he would kill her and that the defendant set her on fire. This was error.

The policy underlying section 115—10.1 is "to prevent a turncoat witness from backing away from a former statement made under circumstances indicating it was likely to be true." *People v. Fauber*, 266 Ill. App. 3d 381, 390-91, 640 N.E.2d 689 (1994). This policy is clearly furthered when a witness acknowledges making the inconsistent statement or when the statement has been electronically recorded such that the fact-finder can hear or even see the witness making the statement, and the witness cannot deny making it. Thus, these types of statements were included by the legislature within the ambit of section 115—10.1 because they are inherently reliable. *People v. Carlos*, 275 Ill. App. 3d 80, 84, 655 N.E.2d 1182 (1995). Additionally, when a proper foundation is laid, admission of statements actually written or signed by the witness also furthers this policy. *E.g., People v. Dixon*, 256 Ill. App. 3d 771, 774-77, 628 N.E.2d 399 (1993). However, "[u]nless a prior inconsistent statement clearly qualifies under section 115—10.1, it is not admissible as substantive evidence." *People v. Salgado*, 263 Ill. App. 3d 238, 248, 635 N.E.2d 1367 (1994).

In this case, the State asks us to hold substantively admissible against a defendant in a criminal case the testimony of one person, averring to what another person wrote down on a piece of paper which, for all intents and purposes, no longer exists. We believe the reliability of this type of statement is far removed from that inherent in the types of statements enumerated in section 115—10.1(c)(2). Indeed, but for the fact that ASA Coyne stated that Laverne wrote

the statements, we perceive no distinction between this case and a case involving the classic hearsay situation in which one person testifies to what another person said. Such hearsay is not admissible as substantive evidence under section 115—10.1(c). *People v. Denny*, 221 Ill. App. 3d 298, 302, 581 N.E.2d 839 (1991).

The State insists, however, that it proved that Laverne made a writing of the inconsistent statements as contemplated by section 115—10.1(c)(2)(A). This "proof" consists of Coyne's testimony that she did so and of Laverne's testimony that she, indeed, wrote answers to Coyne's questions, although not the ones admitted as substantive evidence, which she strongly denied having written.

■ We have examined the cases in which courts have reviewed the admission, as substantive evidence, of inconsistent written statements. In each case of which we are aware, the State, when attempting to lay a foundation for admission of the written statement, was able to produce the actual document, confronting the witness with it, thus offering the witness a chance to acknowledge it and explain the circumstances surrounding its making. *E.g., People v. Willis*, 274 Ill. App. 3d 551, 555, 654 N.E.2d 571 (1995); *Dixon*, 256 Ill. App. 3d at 774-75. Failing that, the evidence has generally not been admitted. *E.g., People v. Hallbeck*, 227 Ill. App. 3d 59, 62-63, 590 N.E.2d 971 (1992).

Even when the State has been permitted to present secondary evidence of the existence of a writing, it has been able to explain the circumstances surrounding its unavailability, as well as demonstrate that the original was, in fact, unavailable. *People v. Baptist*, 76 Ill. 2d 19, 26-27, 399 N.E.2d 1200 (1979). However, *Baptist* did not involve the introduction of secondary evidence as proof of a written prior inconsistent statement under section 115—10.1. Rather, in that case, apparently to enable the State to prove subsequent crimes related to the charged crime, a witness was permitted to testify as to the contents of a letter sent by the defendant to the witness and later destroyed in a fire. The letter purportedly contained a threat against the witness' family if her brother testified against the defendant.

In any event, the record reveals no effort on the part of the State to obtain the notes purportedly confiscated by the attending nurse. Thus, those notes, if in existence, could well be in Laverne's hospital file. We do not believe the State presented a sufficient foundation for the testimony admitted, even assuming *Baptist* applies in this case. Particularly here, where Laverne allegedly wrote the statements a day after being severely burned and while under sedation, and where she denies having written the statement, we think the laying of a proper foundation includes the production of the written statement

itself. Section 115—10.1 clearly contemplates as much. See R. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638, 641-42 (1984) (analyzing quantum of evidence necessary to prove that "document" offered pursuant to section 115—10.1(c)(2)(A) was written or signed by witness).

■ The trial judge, in admitting ASA Coyne's testimony, compared it to the situation where one person views another person writing something in the sand, which is then washed away by the tide. If the viewer testifies that he saw the statement being written, and the writer acknowledges having written something, clearly, the judge noted, a statement was proved to have been written. However, if the observer in that situation may testify as to the contents of the "writing," there is no reason to disallow a mere listener from testifying to what he has heard, the sound of the speaker's voice having also "washed away." Under this interpretation, ASA Sullivan's testimony as to what Laverne told her should also be admissible as substantive evidence. Yet, her testimony is a perfect example of inadmissible hearsay, and section 115—10.1 restricts its use to impeachment. ASA Coyne's testimony is, likewise, traditional hearsay, and it cannot be used as substantive evidence under section 115—10.1

■ Alternatively, the State contends that any error in admitting Coyne's testimony was harmless. An error in the admission of evidence is harmless only if the remaining evidence in the record "is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant." *People v. Solis*, 275 Ill. App. 3d 346, 352, 655 N.E.2d 954 (1995). We must be able to determine that " 'the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " (Emphasis in original.) *People v. Mack*, 167 Ill. 2d 525, 539, 658 N.E.2d 437 (1995), quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 124 L. Ed. 2d 182, 189, 113 S. Ct. 2078, 2081 (1993). This, we cannot do.

The evidence in question, as opposed to all of the remaining evidence in the record, explicitly implicated the defendant in this crime. Indeed, whether the defendant ignited the fire is the only issue in this case. Laverne took the stand and, without wavering, asserted that the defendant did not set her on fire. The jury obviously disregarded this testimony, no doubt, in large part due to her alleged "writing" implicating him, a statement which became the only noncircumstantial evidence in addition to Laverne's testimony. As we explain below, the remaining evidence does not inescapably point to the defendant as the one who set Laverne on fire. Under such circumstances, the admission of Coyne's testimony as substantive evidence was not harmless error.

■ For his part, the defendant argues that his conviction should be reversed outright because, in the absence of Coyne's testimony as to Laverne's statements, there was absolutely no substantive evidence upon which a jury could find him guilty of heinous battery. The State responds that the defendant has waived this issue for purposes of review because his brief and argument on appeal do not satisfy the requirements of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), that all argument be supported by citation to relevant authority. However, a claim of insufficiency of the evidence to support a criminal conviction is a recognized exception to the waiver rule. *People v. Lopez*, 242 Ill. App. 3d 160, 162, 610 N.E.2d 189 (1993). Furthermore, our harmless error analysis necessarily entails a review of the entire record.

■ In reviewing the sufficiency of the evidence, we examine the record in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Negrete*, 258 Ill. App. 3d 27, 29-30, 629 N.E.2d 687 (1994). The defendant was charged with heinous battery pursuant to section 12—4.1 of the Criminal Code of 1961, which requires that the State prove that he, in "committing a battery, knowingly causes severe and permanent disability or disfigurement by means of a caustic substance." Ill. Rev. Stat. 1989, ch. 38, par. 12—4.1 (now 720 ILCS 5/12—4.1 (West 1994)). The State's indictment of the defendant charged that the defendant committed heinous battery when he "poured liquid paste wax on Laverne Kinsloe[,] ignited the liquid paste wax and set Laverne Kinsloe on fire."

Here, the defendant concedes that he poured the wax, a combustible substance, onto Laverne. The record also reflects that Laverne has suffered severe and permanent disfigurement. We must determine whether the record contains sufficient evidence from which a jury could conclude that it was the defendant who ignited the wax, setting Laverne on fire.

The only noncircumstantial evidence in the record as to who set Laverne on fire came from Laverne, who testified that the defendant did not do it. Thus, as in *People v. Szymanowski*, 182 Ill. App. 3d 885, 888, 538 N.E.2d 729 (1989), we are presented with "an unusual case in that defendant's guilt was premised upon circumstantial evidence contrary to the victim's own eyewitness testimony." Laverne's credibility was impeached by testimony that she had previously implicated the defendant, like the eyewitness in *Szymanowski*. See *Szymanowski*, 182 Ill. App. 3d at 888 (noting that before trial, victim had

told psychiatrist that the defendant caused her injuries). At trial, La-
verne, like the witness in *Szymanowski*, 182 Ill. App. 3d at 888,
steadfastly maintained the defendant's innocence.

As in *Szymanowski*, that Laverne was impeached in this manner,
however, does not prove that the defendant committed the crime
charged. This is so because Laverne's earlier statements "[were] not
admitted as proof of the truth of the facts stated out of court, but to
cast doubt on the testimony by showing [her] inconsistency." *People
v. Larry*, 218 Ill. App. 3d 658, 666, 578 N.E.2d 1069 (1991). See *People
v. Cruz*, 162 Ill. 2d 314, 359, 643 N.E.2d 636 (1994) (purpose of
impeachment by prior inconsistent statement is to "destroy the cred-
ibility" of witness and "not to establish the truth of the impeaching
material" (emphasis omitted)). Nor does Laverne's earlier statement
necessarily render her in-court testimony presumptively false. As
one commentator has stated:

> "The theory of attack by prior inconsistent statements is not
> based on the assumption that the present testimony is false and
> the former statement true but rather upon the notion that talking
> one way on the stand and another way previously is blowing hot
> and cold and raises a doubt as to the truthfulness of both state-
> ments." J. Strong, McCormick on Evidence § 34, at 114 (4th ed.
> 1992).

Thus, impeachment by prior inconsistent statement " 'cancel[s] out
the witness' testimony.' " *Cruz*, 162 Ill. 2d at 359, quoting *People v.
Weaver*, 92 Ill. 2d 545, 563, 442 N.E.2d 255 (1982).

The evidence in this case supports this analysis. There is
testimony that Laverne told ASAs Coyne and Sullivan that the de-
fendant set her on fire; but Laverne denies that she told them that
the defendant had set her on fire. She apparently told paramedics
that she lit a cigarette before she caught fire and that she was set on
fire by accident. She told Dr. Gamelli merely that she was set on fire.
Finally, she told the jury under oath that she set herself on fire. Al-
though we would ordinarily leave the finder of fact to determine the
credibility of a witness, it is our prerogative to weigh credibility
where the testimony is so unsatisfactory as to raise a reasonable
doubt of guilt. *People v. Bailey*, 265 Ill. App. 3d 262, 271, 638 N.E.2d
192 (1994).

Under the circumstances, we find Laverne's trial testimony un-
persuasive to establish guilt. Certainly, it cannot be used to draw the
negative inference that, because she is not to be believed at all, the
defendant, as the only other person present, must have set her on
fire. To allow that would effectively turn impeachment evidence into
substantive evidence. Indeed, it is the danger of that occurring which

has led our supreme court recently to question whether, in light of the advent of section 115—10.1, "the introduction of oral inconsistent statements under the guise of impeachment should be foreclosed." *Cruz*, 162 Ill. 2d at 362, 364-65, citing Steigmann, 72 Ill. B.J. at 642-43.

∎ Excluding Laverne's testimony as to the origins of the fire, the remaining circumstantial evidence of significance came in the form of expert opinion testimony from Batson, the arson investigator, and the circumstances surrounding the altercation between Laverne and the defendant. A finding of guilt may rest upon circumstantial evidence, which is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to establish guilt or innocence. *People v. Campbell*, 146 Ill. 2d 363, 379, 586 N.E.2d 1261 (1992). Although the prosecution need not exclude every reasonable hypothesis of innocence (*People v. Pintos*, 133 Ill. 2d 286, 291, 549 N.E.2d 344 (1989)), the proof in such cases still must establish guilt beyond a reasonable doubt.

∎ The evidence shows that the defendant and Laverne were involved in a fight. He beat and choked her and poured paste wax on her. At some point, the front of her shirt caught on fire. She tried to pat out the flames. She felt something, apparently the defendant on top of her, who "dropped and rolled" her, apparently in an unsuccessful attempt to extinguish the fire. The back of her shirt ignited, but when is unclear. Laverne continued to burn, and she saw the defendant directing her to get into the shower in the bathroom. Eventually, the water was turned on, perhaps by Laverne, although precisely how is also unclear from the record, and the fire was doused. The police recovered a lighter from the floor of the shower. This chain of events does not lead to a *reasonable* inference that the defendant, rather than the victim, ignited the fire.

The State seeks to draw that inference relying exclusively on Batson's testimony. Batson stated that the shirt Laverne was wearing contained two points of fire origin, one in front and one in back. Therefore, according to the expert, the fire could not have started accidentally, but was done so with intent to cause harm, although we fail to discern how he could determine that the fire was ignited with intent to cause harm.

Furthermore, Batson's testimony does not inescapably lead to the conclusion that the defendant started the fire. Batson acknowledged that if Laverne had started the fire on the front of her shirt, the act of the defendant in dropping her to the ground and rolling her could have ignited the back of her shirt. He also stated that the fire on the front had been extinguished. Although Batson stated that the

V-pattern burn on the back of the shirt indicates it burned upward, the evidence indicates that Laverne was standing as she struggled to get to the shower, which accounts for the V-pattern. Finally, the fact that the paste wax was combustible, rather than flammable, does not lead to an inference one way or the other. Laverne was covered with the paste wax and was intoxicated by the fumes. If she was holding a lighter, as she claims, it is not difficult to imagine her accidentally touching the flame to the wax. There is also no evidence from which a jury could infer that the lighter recovered in the shower was dropped by the defendant rather than Laverne.

None of the circumstantial evidence is inconsistent with Laverne's trial testimony. Thus, like the court in *Szymanowski*, 182 Ill. App. 3d at 888, while "[w]e acknowledge that evidence presented by the State suggests defendant could have been responsible," we cannot conclude that there is sufficient evidence that the defendant committed the crime charged beyond a reasonable doubt, and we are not left with an "abiding conviction of defendant's guilt." *Bailey*, 265 Ill. App. 3d at 271.

For the foregoing reasons, the judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA, J., concurs.

JUSTICE RAKOWSKI, concurring in part and dissenting in part:
I agree that the admission of Laverne Kinsloe's prior inconsistent statement was error and that the error was not harmless. However, unlike the majority, I believe that the remaining evidence, taken in a light most favorable to the prosecution, is such that a rational trier of fact could find the essential elements of heinous battery (720 ILCS 5/12—4.1 (West 1994)) beyond a reasonable doubt. Thus, although the evidence of defendant's guilt is not so overwhelming as to render the error harmless, it is nevertheless sufficient to convict. See *People v. Enis*, 139 Ill. 2d 264, 298, 564 N.E.2d 1155 (1990).

I would reverse the judgment of the circuit court and remand for a new trial.