(No. 15533.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. ANDERSON, Plaintiff in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*when driver of automobile may be convicted of assault.* Where the proof of an injury to a pedestrian by an automobile is sufficient to establish beyond a reasonable doubt that the conduct of the driver was so reckless, wanton and willful as to show an utter disregard for the safety of pedestrians, a conviction for assault to commit a bodily injury is warranted, but not where an injury is caused by mere negligence not amounting to a reckless, willful and wanton disregard of consequences to others.

2. SAME—*mere negligence is not criminal.* A lawful act negligently performed is not criminal, and a person is not criminally liable for every act of negligence which causes an injury to another.

3. SAME—*when exceeding speed limit of Motor Vehicle law is not a criminal act.* Where the driver of an automobile is charged with assault in running into a pedestrian, the mere fact that the proof shows he was driving at a speed of twelve or fifteen miles an hour in a business district, which is from two to five miles an hour in excess of the limit specified in section 22 of the Motor Vehicle law, is not conclusive evidence of such recklessness and willfulness as to make the act criminal.

4. SAME—*when proof does not show driver of automobile guilty of assault.* Where the driver of an automobile is charged with an assault in running into a pedestrian on a rainy night, proof that he did not heed the signal of the traffic policeman does not show such willful and wanton disregard of the safety of pedestrians as to render him criminally liable, where there is evidence that he did not see the policeman at the crossing, did not hear his signal for the traffic to stop, and was not exceeding fifteen miles an hour.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

LIGHTFOOT & BRAUN, and RANKIN, LUSTFIELD & LANDISE, (ODE L. RANKIN, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error (hereafter called defendant) was charged by information in the municipal court of Chicago with an assault with a deadly weapon, an automobile, with intent to inflict on Mrs. M. A. Carroll a bodily injury without any provocation and under circumstances showing an abandoned and malignant heart. A jury was waived and cause heard by the court. Defendant was found guilty and fined $500 and costs. The Appellate Court affirmed the judgment, and defendant has sued out a writ of error to review the judgment of the Appellate Court.

Counsel for defendant insist that at most the evidence shows defendant was doing a lawful act,—driving on a public street,—in a negligent manner, without any intent to injure Mrs. Carroll or any other person, and there was an entire failure of the proof to establish the intent charged in the information; that it is not sufficient to prove negligence and injury caused thereby, but the intent to inflict it must be proved. The State contends the proof shows defendant drove his car on Michigan boulevard, in Chicago, across Randolph street contrary to the signal of the traffic policeman, and at such a high rate of speed as to show a reckless, willful and wanton disregard of the safety of pedestrians, from which the law implies malice, and the intent to injure a particular person need not be proved.

The offense charged in the information is defined by the statute to be an assault with a deadly weapon with intent to inflict upon the person of another a bodily injury where no considerable provocation appears or where the circumstances

of the assault show an abandoned or malignant heart.  We have sustained convictions for manslaughter where the death was caused by the reckless driving of an automobile, wherein we held an intent to kill, or malice, was not required to be proved.  (*People* v. *Falkovitch*, 280 Ill. 321; *People* v. *Camberis*, 297 id. 455; *People* v. *Schwartz*, 298 id. 218.)  Under the law as laid down in those cases we have no doubt, where the proof is sufficient to establish beyond reasonable doubt that under the circumstances of the injury the conduct of the driver of an automobile was so reckless, wanton and willful as to show an utter disregard for the safety of pedestrians, a conviction for assault to commit a bodily injury would be warranted.  An injury caused by negligence not amounting to a reckless, willful and wanton disregard of consequences to others cannot be made the basis of a criminal action.  The question here presented for decision is whether the proof shows, beyond reasonable doubt, that defendant's conduct was so willful and wanton as to constitute the crime charged.

Defendant was driving his car, a Ford sedan, south on Michigan boulevard, in Chicago, at 10:45 P. M., March 20, 1921.  Mrs. Carroll and her brother-in-law approached Michigan boulevard on foot on the sidewalk on the south side of Randolph street, intending to continue east across Michigan boulevard.  When she and her companion arrived at the corner of Randolph street and Michigan boulevard they stopped to wait for the signal to cross.  There was an island in Michigan boulevard directly east of where Mrs. Carroll stood, at which traffic policeman Weldon was stationed to control the traffic on the two streets at that place, which he did by blowing a whistle and waving his hand.  Two blasts of the whistle meant the north and south traffic should stop and the east and west traffic should move.  One blast meant the east and west traffic should stop and the north and south traffic should move.  Mrs. Carroll testified she and her companion stood on the corner until the whistle

blew for the north and south traffic to stop and the east and west traffic to move, and the policeman motioned them to cross Michigan boulevard. She looked, saw no car coming and started to cross. That was the last she remembers, as she was rendered unconscious by being struck by defendant's car. She could not remember how far she had gone into Michigan boulevard. She was seriously injured. It was either raining at the time or had been shortly before. The witness thought it was not raining at the time of her injury.

Traffic policeman Weldon testified he was at the south island at Michigan boulevard and Randolph street; that he signaled the north and south-bound traffic to stop and the east and west-bound traffic to move on. Mrs. Carroll and her companion were standing on the corner and appeared to want to cross Michigan boulevard. He motioned them to cross. They started and had gone about eight or ten feet when they were hit by defendant's car. Mr. Carroll was thrown to one side and Mrs. Carroll was dragged about forty feet. The witness testified the car was going about thirty miles an hour when it hit Mrs. Carroll. With a whistle he signaled the north and south traffic to stop and also held up his hand. He testified defendant must have been forty or fifty feet north of the crossing when he blew the whistle. The first he saw of the car was when it struck the Carrolls. The traffic north and south was very light at the time. Defendant did not stop but drove on across Randolph street. Defendant stopped as quick as he could after hitting the Carrolls, but did not bring his car to a stop until it had run hundred feet south of Randolph street. Witness did not see the car before it hit the Carrolls. From the distance the car went after hitting them before it stopped he believed it was going thirty or thirty-five miles an hour. He thought if defendant had been driving slower he could have stopped sooner. It was not raining at that particular time but had rained earlier in the evening and the pavement was wet. Defendant's wife and another man were in de-

fendant's car. Witness said there were no cars on defendant's right to prevent him going to the curb after the accident. There was a car following him seventy-five or one hundred feet. Witness blew his whistle loud to make it heard above the noise.

Daniel T. Carroll was with Mrs. Carroll when she was struck by the automobile. He testified that he heard two whistles, and the officer standing at the island in Michigan boulevard beckoned them to cross. They started, and when about eight or ten feet from the corner were struck. Witness was knocked unconscious. When he returned to consciousness he was ten or fifteen feet south of the Randolph street curb. He testified he looked to the north just before he started to cross the street. He had no idea how fast the car was going.

Henry Hopf, automobile superintendent for the Buick Motor Company, testified he was driving at Michigan avenue and Randolph street, going south, when the injury occurred. He slowed down at Randolph street. He was so far back he did not hear the whistle. As he approached Randolph street, driving slowly, the first thing he noticed was two bodies rolling on the street. The lady was at the left of the car and the man on its right. The witness was able to stop at the north side of the crossing. The policeman motioned to him and said, "Come on quick! Get that Ford!" and he drove after it, trying to get in front of it. The driver slowed the car down immediately after the accident, trying to get near the curb. Witness pulled in front of him with his car. The Ford car came to a stop at the curb. The driver and witness got out of their cars and walked back to the crossing where the accident happened. The driver was defendant. He stopped his car about one hundred or one hundred and fifty feet from the corner. The traffic was not heavy at the time but there were several cars ahead of the Ford. Witness did not see defendant before he crossed Randolph street. It was a wet night and was

storming. It had rained and was drizzling. The defendant turned his car into the curb as quick as he could and witness turned in in front of him. One car stopped at the north crossing, near the curb. As the witness remembered, the body of Mrs. Carroll was lying right at the crossing from the south sidewalk on Randolph street. Cars were standing in Randolph street, but witness saw none moving until after the accident.

The above, we believe, is the substance of the material testimony for the People.

E. L. Graves testified for defendant that he was riding in defendant's car when the injury occurred and was sitting on his right side. The car was a left-hand drive. They were going south on Michigan boulevard. The traffic was pretty heavy and there were cars on both sides of them. As they approached Randolph street witness did not see a police officer. They were driving about twelve or fourteen miles an hour, about eight or ten feet from the curb. As they came to Randolph street a large car was about to turn south into Michigan avenue and defendant's car had to turn out toward the island to avoid an accident. They were following a large touring car,—about eighteen or twenty feet back of it. After the Carrolls were struck, defendant's car turned to the curb as quickly as possible. Two cars ahead of them prevented their stopping until they could pull up to the curb, which defendant's car did about twenty-five or thirty feet south of Randolph street. Witness did not see the Carrolls until they were directly in front of the car. It was raining and witness could not say which way they were looking. They were going east from Randolph street. He testified he heard no whistle as the car approached Randolph street and saw no police officer until after the parties were struck. He said there was no person standing on the safety island platform as defendant's car approached Randolph street and he did not see the police officer as the car crossed that street. The windshield was up and the win-

dows open.    Witness is a nephew of defendant.    He testi-
fied the Carrolls came onto Michigan avenue between the
defendant's car and the car ahead of them.    They were run-
ning toward the east side of Michigan avenue.    They were
south of the cross-walk on Michigan avenue.

Defendant testified that as he was crossing Randolph
street he put his car in low gear and turned a little to the
east to avoid collision with a car turning south out of Ran-
dolph street.    When he saw the Carrolls they were about
two feet from his car, and he applied the brakes but was
too late.    The car skidded a little bit.    He was following a
big automobile and there was a car standing at the parking.
It was raining and wet.    The car was in low gear and
could not go over fifteen miles an hour.    It was going be-
tween twelve and fifteen miles at the time it struck the
Carrolls.    He turned in to the curb as quickly as he could.
There was a car on his right which prevented his getting
directly to the curb.    He stopped about fifty feet or so from
Randolph street.    As he approached Randolph street he
was following a large car, about fifteen or twenty feet be-
hind it.    He followed it as it passed the north line of Ran-
dolph street.    It was not going fast.    Defendant heard no
whistle blown before he crossed Randolph street.    When he
came to Randolph street he looked to the safety island.
One was at the north side of Randolph street and the other
at the south side.    He could not tell whether he saw both.
He was following the car ahead of him.    He always
watched the police for signals.    He thought one whistle was
to stop and two to go ahead, but he heard no whistles.

To avoid a continuance it was stipulated that Mrs.
Graves, sister-in-law of defendant, who was in the car at
the time of the injury, would, if present, corroborate the
testimony of her son, E. L. Graves.

We do not think the evidence shows, beyond reasonable
doubt, that the conduct of defendant was so willfully and

wantonly reckless as to justify the verdict of guilty of the crime charged. It may be conceded he was negligent, but mere negligence is not criminal. A person is not criminally liable for every act of negligence which causes an injury to another. A lawful act negligently performed is not criminal. (*People* v. *Adams,* 289 Ill. 339.) The weight of the evidence is that defendant was driving from twelve to fifteen miles an hour when he crossed Randolph street and struck Mrs. Carroll. True, the policeman testified that in his opinion he was going thirty or thirty-five miles an hour, but he did not see the car before Mrs. Carroll was struck. It is apparent his opinion was based largely on the distance the car went after the injury before it was stopped. All the testimony is that defendant stopped as soon as he could, but the testimony of the witnesses for defendant is that he could not turn in to the curb any sooner than he did because of a car or cars on his right. Section 22 of the Motor Vehicle act makes driving through closely built-up business portions of a city at a rate of speed in excess of ten miles an hour *prima facie* evidence the driver is going at a rate of speed greater than is reasonable or so as to endanger life or limb or injure the property of any person. Defendant was driving at a speed of twelve or fifteen miles an hour, but the mere fact that he was driving from two to five miles an hour in excess of the speed limit mentioned in section 22 is not conclusive of such recklessness and willfulness as to make the act criminal. It may very well be conceded that the proof shows the signal was given before defendant crossed Randolph street for the north and south traffic to stop and for the east and west traffic to move. Defendant and his witnesses testified they did not hear it and saw no policeman at the crossing. This may well have been the result of negligence, but if defendant did not know the signal had been given and saw no one to warn him to stop, his act in driving across Randolph street, however negligent it might have been, was not a willful and wanton disregard

of the safety of pedestrians. The injury to Mrs. Carroll was serious and very unfortunate, and while a reckless and careless driver of so dangerous a machine as an automobile who causes an injury to another does not excite sympathy, a mere act of carelessness cannot be held to be a crime.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*