2020 IL App (1st) 171890-U

No. 1-17-1890

Order filed December 23, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 1394 |
| | ) | |
| JASON RAYFORD, | ) | Honorable |
| | ) | Joseph Michael Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for reckless homicide where the evidence presented was sufficient to prove beyond a reasonable doubt that defendant acted recklessly.

¶ 2    Following a bench trial, defendant Jason Rayford was convicted of reckless homicide (720 ILCS 5/9-3 (West 2014)) and of leaving the scene of a motor vehicle accident involving death (625 ILCS 5/11-401 (West 2014)), and he was sentenced to consecutive terms of 28 and 22

months' imprisonment, respectively.[1] On appeal, defendant contends that the evidence was insufficient to sustain his conviction for reckless homicide because the State failed to prove beyond a reasonable doubt that he acted recklessly *i.e.* that he was consciously aware that his actions were likely to cause death or great bodily harm. Defendant does not challenge his conviction for leaving the scene of a motor vehicle accident involving death. For the following reasons, we affirm.

¶ 3    Sheena Sykes testified that on December 20, 2014, after having attended a Christmas party, she, Dajuan Thomas (her fiancé), Javaire Thomas (Dajuan's cousin), defendant, Kenya Thomas (defendant's wife), and Flenenice (Kenya's friend) went to a lounge.[2] She identified defendant in court, and stated he drank alcohol at the Christmas party but not at the lounge. The group stayed at the lounge for 30 minutes to an hour; then Kenya drove them all to a gas station. At the gas station, Dajuan left the car, and the rest of the group drove to a restaurant to eat. On the way there, defendant began to argue with Javaire and Sykes, and told Sykes to "shut the f*** up, b***." Javaire exited the car and went to ride with his aunt. At this time, Kenya was driving the car, defendant was in the front passenger seat, Sykes was sitting behind defendant, and Flenenice was sitting behind Kenya. Defendant again began to argue with Sykes. Kenya told defendant to leave Sykes alone, to not be disrespectful and to be quiet. Defendant and Kenya then began to argue and defendant "smacked" Kenya on the face. Sykes did not see if defendant hit Kenya with an open or closed hand. Kenya placed her right arm up, and defendant grabbed

---

[1] Although the mittimus does not reflect consecutive sentences, the record shows that in imposing sentence, the trial court noted that the terms were to be served consecutively. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87 ("When the oral pronouncement of the court and the written order are in conflict, oral pronouncement controls.").

[2] Because there are multiple witnesses with the same last name, we refer to these witnesses by their first names; Flenenice's last name is not provided in the record.

the wheel with one hand. Sykes explained that defendant "pulled the wheel in a downward motion," and "it looked like he was trying to control the wheel" but "it lost control and that's when the accident happened." Sykes demonstrated for the court how defendant, using his left hand, pulled the steering wheel in a downward motion. After he did so, the car hit a person, later identified as Eddie Fuentes, who was entering a parked car. Sykes stayed on the scene until an ambulance arrived. She did not see defendant on the scene. She did not recall testimony before the grand jury where she testified defendant "got out [of the] car and walked off."

¶ 4    On cross-examination, Sykes testified that at the time there was no traffic on Western Avenue. She did not know if there were people at Maxwell's hot dog stand ("Maxwell's"), which was "around 50th and Western." The group was traveling southbound on Western prior to the accident.

¶ 5    Javaire testified that he was a passenger in the car and witnessed an argument between defendant and Sykes. He also saw Kenya crying. However, he exited the car before the accident occurred.

¶ 6    Leticia Montarrez, mother of Fuentes, testified and identified a photo of Fuentes. The photo was entered into evidence.

¶ 7    Sazsha Alvarez testified that about 3:00 a.m., on the date in question, she was driving southbound near the 5300 block of South Western Avenue. Alvarez was driving behind a car that "mysteriously just went to the right to where the parked cars were by the restaurant." She described the car as "going fine one minute and just random just turned hard, just really, really hard to the right" where it struck multiple vehicles. Alvarez parked her car in front of the scene of the accident, exited her car and saw a person on the ground bleeding. She identified a photo of

Fuentes as the man on the ground. Alvarez saw defendant on the sidewalk. She remained on scene until paramedics came and took Fuentes away at which point she did not see defendant present.

¶ 8     On cross-examination, Alvarez testified the speed limit in the area was 30 miles per hour. Prior to the accident, she glanced at Maxwell's and it looked like there was a crowd of people there. She did not hear tires squealing before the accident. She explained that she saw the car move laterally within the lane as it went southbound, however that was "way before" she glanced at Maxwell's. Prior to the accident, the car was traveling in a straight line.

¶ 9     The State presented several stipulations. The parties stipulated that, if called: Detective Scott Reiff would testify he administered a buccal swab to defendant; Evidence Technician Kenneth Leflore would testify he took buccal swabs from the car; Detective Dale Potter would testify that he administered a buccal swab to Kenya; Forensic Scientist Greg DiDomenic would testify that he conducted DNA analysis on the buccal swab collected from defendant and swabs from the car and found that DNA on the exterior of the car matched Fuentes and there were at least two DNA profiles on the swabs collected from the steering wheel and one matched the DNA profile from Kenya; Medical Examiner Kristin Escobar Alvarenga would testify that she conducted a postmortem examination of Fuentes and discovered that the cause of death was multiple injuries due to a vehicle striking him, and the manner of death was an accident; and Chicago Police Investigator Niezabitowskie would testify that he examined the crash data recorder from the car involved in the accident and that from 2.5 seconds to 1 second before the car crash the car was travelling at a speed of 45 miles per an hour.

¶ 10    After defendant's motion for directed verdict was denied, he presented one stipulation. The parties stipulated that, if called, Lee Daley would testify that during an interview with Sykes she told him Kenya tried to block defendant's "swing as she drove and the car began to veer to the left. [Defendant] then grabbed the steering wheel and then pulled to the right."

¶ 11    The court found defendant guilty of reckless homicide and leaving the scene of an accident involving death. In doing so, the court noted that it considered the testimony presented and believed "the real issue here is *** whether [defendant's] acts constituted driving or operating a vehicle as required." The court pointed out that it was clear that "the State has proven the onus of these offenses beyond a reasonable doubt." Defendant filed a motion for new trial, which the court denied. The court sentenced defendant to 28 months' imprisonment for reckless homicide and 22 months' imprisonment for leaving the scene of an accident involving death, with the terms to be served consecutively.

¶ 12    On appeal, defendant contends that the evidence was insufficient to convict him of reckless homicide. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he was consciously aware that his actions were likely to cause death or great bodily harm.

¶ 13    When a defendant challenges his conviction based upon the sufficiency of the evidence presented against him, this court asks whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Under this standard, we draw "all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill.2d 30, 43 (2009). It is the

responsibility of the trier of fact to determine the witness' credibility, the weight given to their testimony, to resolve conflicts in the evidence, and to draw all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *People v. Brown*, 22013 IL 114196, ¶ 48. A reviewing court " 'will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 14    In this case, defendant challenges his reckless homicide conviction. A person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which caused the death are performed recklessly and as to create a likelihood of death or great bodily harm to some person. 720 ILCS 5/9-3 (West 2014); *People v. Edmundson*, 247 Ill. App. 3d 738, 741 (1993).

¶ 15    Defendant contends that the State failed to prove beyond a reasonable doubt that he acted recklessly *i.e.* that he was consciously aware his actions were likely to cause death or great bodily harm. In doing so, defendant does not dispute that he intentionally grabbed the steering wheel and moved it which caused the crash. Rather, he essentially maintains that when Kenya "lifted her hand to defend herself, the car veered left, so [defendant] tried to control the wheel and pulled it back to the right" which resulted in the accident. He argues that his actions do not demonstrate a conscious disregard of a deadly risk.

¶ 16    "Reckless conduct occurs when an individual consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to some individual

and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation." *Edmundson*, 247 Ill. App. 3d at 741; accord 720 ILCS 5/4-6 (West 2014). The State does have the burden of proving every element of a criminal offense beyond a reasonable doubt. U.S. Const., amend. XIV; Ill. Const., art. I, § 2; *In Re Winship*, 397 U.S. 358, 364 (1970); *People v. Brown*, 2013 IL 114196, ¶ 48. Ultimately, "[t]he determination of whether a killing has resulted from an accident or reckless conduct, however, is a question for the trier of fact." *People v. Hoover*, 250 Ill. App. 3d 338, 351 (1993).

¶ 17    After reviewing the evidence, in the light most favorable to the State we find that a rational trier of fact could conclude that defendant acted recklessly. Sykes testified about defendant's argument with Kenya, the driver of the car. Sykes explained that during the argument defendant "smacked" Kenya, who raised her right hand, and then defendant "grabbed the wheel" with his left hand, and "it looked like he was trying to control the wheel." Sykes demonstrated for the court how defendant pulled the steering wheel in a downward motion which resulted in the crash. Alvarez, who was driving behind Kenya, testified she saw the car turn "really, really hard to the right." She explained that the car "mysteriously just went to the right to where the parked cars were by the restaurant." She described the car as "going fine one minute and just random just turned hard, just really, really hard to the right" where it struck multiple vehicles. Defendant was not at the scene of the crash afterwards when ambulances arrived. This evidence and the reasonable inferences therefrom were sufficient to permit the trier of fact to conclude that defendant acted recklessly. *People v. Zator*, 209 Ill. App. 3d 322, 328 (1991) (The mental state of recklessness will "be inferred from all the facts and circumstances in the

record."); *People v. Simmons*, 407 Ill. 417, 424 (1950) (Among the circumstances that can be included are defendant's flight from the scene of the accident.).

¶ 18    In reaching this conclusion, we are not persuaded by defendant's argument that he grabbed the wheel to prevent an accident. In support of this argument, he relies on the stipulation that Sykes told a police investigator that the car began to veer to the left as Kenya attempted to block defendant, who then grabbed the steering wheel and pulled it to the right. However, Alvarez, who was driving behind Kenya, testified that the car "mysteriously just went to the right to where the parked cars were by the restaurant." She described the car as "going fine one minute and just random just turned hard, just really, really hard to the right" where it struck multiple vehicles. Although Alvarez saw the car moving laterally left and right in the lane, she stated that "was before, way before" Maxwell's where the crash occurred. In addition, Sykes explained that defendant "pulled the wheel in a downward motion," and "it looked like he was trying to control the wheel" but "it lost control and that's when the accident happened." As mentioned, it is the responsibility of the trier of fact to determine the witness' credibility, the weight given to their testimony, to resolve conflicts in the evidence, and to draw all reasonable inferences from the evidence. *Ortiz*, 196 Ill. 2d 236, 259 (2001). This court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Brown*, 22013 IL 114196, ¶ 48. Given the evidence presented, we cannot say that it was so improbable, unsatisfactory, or inconclusive as to create a reasonable doubt of defendant's guilt. *Lloyd*, 2013 IL 113510, ¶ 42.

¶ 19    We are likewise unpersuaded by defendant's reliance on *People v. Anderson*, 310 Ill. 389 (1923). In *Anderson*, the defendant, the driver of a vehicle, did not hear a policeman's whistle

and struck a pedestrian at a crosswalk. *Id.* at 394-95. The defendant stopped his car as soon as he could and remained on the scene. *Id.* at 393, 396. He was charged and found guilty of assault with a deadly weapon (an automobile) with intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned or malignant heart. *Id.* at 390. On appeal, the defendant argued that the evidence presented did not show beyond a reasonable doubt that his conduct was so willful and wanton as to constitute the crime charged. *Id.* The Illinois Supreme Court agreed, noting that the defendant's conduct was not so willfully and wantonly reckless as to justify the verdict of guilt. *Id.* at 395-96. The court pointed out that the defendant's act of driving the car and failing to notice a policeman's whistle was negligent, but a lawful act negligently performed is not criminal. *Id.* Here, unlike in *Anderson*, defendant was not engaged in a lawful act that he performed negligently. *Id.* Rather, he was the passenger in a vehicle, struck the driver and took the affirmative action of pulling down on the steering wheel of the travelling car. *Id.* Defendant's actions were reckless regardless of whether there were pedestrians present, as striking the driver in the face and then forcefully pulling on the steering wheel of a moving car traveling at the speed of 45 miles per hour, amount to conduct that is a gross deviation from the standard of care of a reasonable person would exercise.

¶ 20    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 21    Affirmed.